# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | Case No. 1:07CR000020 |
| v. | ) | **OPINION AND ORDER** |
| **BRYANT KELLY PRIDE,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian M. Ely, Jessee, Read & Ely, P.C., Abingdon, Virginia, for Defendant.*

In this criminal case, the defendant has moved for a judgment of acquittal and alternatively for a new trial. For the reasons that follow, I find it appropriate to deny these motions.

I

The defendant, Bryant Kelly Pride, was convicted by a jury of possession with intent to distribute or distribution of cocaine base in excess of fifty grams in violation of 21 U.S.C.A. § 841(a)(1), (b)(1)(A) (West 1999 & Supp. 2007). He has filed a Motion for Acquittal claiming there was insufficient evidence to support his conviction. In the alternative, he has filed a Motion for New Trial arguing that it was an abuse of discretion for the court to deny his motion for a continuance on the day

of trial. These motions have been briefed by the defendant and are now ripe for decision.[1]

As shown by the evidence presented at trial, the defendant was arrested by law enforcement officers at a gas station during a drug "buy-bust" operation.[2] This operation was organized by local and federal authorities with the assistance of Britney Branch, a confidential informant ("CI"). Branch had previously approached local authorities offering to cooperate in undercover drug operations in exchange for favorable treatment on her own pending state drug charges.

On March 7, 2007, officers from the Washington County Sheriff's Department and the Abingdon Police Department, along with agents from the federal Drug Enforcement Administration ("DEA"), met the CI at a parking lot at the local community college in preparation for an undercover drug purchase they intended her to make at a nearby gas station. The CI arrived in her own sports utility vehicle.

Deputy Kevin Widener was at the community college parking lot when Branch arrived, and he searched her person for hidden contraband. He testified that there

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

[2] A "buy-bust" is a drug sting operation that occurs when an undercover police officer or confidential informant purchases drugs from a drug dealer. The arrest of the seller is made immediately after the buy at or near the scene of the transaction.

-2-

were no female officers available at the time to search Branch, and he admitted that a female officer would likely have conducted a more thorough search of Branch prior to allowing her to participate in the drug transaction. It is standard procedure to conduct such searches of CIs to ensure that they are not hiding contraband. While Deputy Widener searched Branch, another officer searched her vehicle for approximately ten minutes. Neither search uncovered any drugs. Following the search, the officers gave Branch $1,000 in marked bills to purchase the drugs and they proceeded to a hill overlooking the gas station. Branch was then allowed to drive her own vehicle to the gas station unaccompanied by any police officer, though she was observed from a distance by the police during the entire time.

After waiting at the gas station, a white Chevrolet Blazer pulled into the parking lot near Branch's vehicle. Branch then exited her vehicle and entered the backseat of the Blazer. After some minutes, the police converged on the Blazer. The owner and operator of the vehicle, Andrea Tanner, was removed from the vehicle and placed in handcuffs. The defendant was in the front passenger seat and was also removed from the vehicle. A search of the vehicle conducted at the scene revealed a set of digital scales on the front center consol. Numerous one hundred dollar bills were also found on the center consul and in the front passenger area. The police recovered two plastic bags of drugs—one directly from the CI's hands and one from

the area in which she was standing when she was taken out of the vehicle. One bag contained 13.4 grams of crack cocaine and the other contained eleven grams of powder cocaine. The defendant was searched and nearly $2,800 in cash was recovered from his clothing and wallet. However, none of the marked bills given to Branch were found on his person. Of the $1,000 in marked bills, only $800 was found in the vehicle. The remaining $200 was never recovered and no evidence was introduced to explain what had happened to this money. The marked bills that were recovered were found in the front passenger area of the vehicle near where the defendant was seated.

The defendant was subsequently transported to the Abingdon Police Department were he was advised of his Miranda rights and questioned. The defendant made a number of statements to the DEA agents who were present during the questioning. He stated that the police had done a good job that night; that he would only assist them in undercover drug stings against persons he did not know; that he was prepared to do time in federal prison; and he also confirmed that he had prior drug trafficking convictions.[3]

---

[3] The defendant's statements regarding his past drug trafficking convictions were admitted on the ground that they established his knowledge of the possession of the controlled substances and that he did not act by accident or mistake. The court gave a limiting instruction to the jury that the statements should only be considered to prove the defendant's knowledge or intent and not to prove that the defendant had acted in conformity

After being asked whether he had any drugs hidden on his person, the defendant produced from his underwear a large plastic bag containing 55.8 grams of cocaine base and a smaller plastic bag containing 10.4 grams of cocaine base.

On the morning the case was scheduled to proceed to trial, defense counsel filed a written motion for a continuance based on information that the government had disclosed to him on the prior evening. Defense counsel informed the court that the government had sent an e-mail at approximately 5:15 P.M. the day before, which he did not receive until after 6:00 P.M. Along with the CI's criminal record, the e-mail disclosed new information that had not previously been provided by the government. In particular, the e-mail informed defense counsel that Branch had been involved in another undercover operation as a CI with the Bristol Police Department and had been caught hiding drugs for her own personal use. The e-mail did not provide a date on which the purchase occurred nor did it give the names of the officers who discovered that Branch had attempted to steal drugs.

The government attorney represented to the court that he had only discovered the information during trial preparation the day before. The attorney stated that the

---

with his past criminal acts. *See United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997) (allowing admission of evidence of the defendant's prior dealings under Rule 404(b) to show that he was not an "unwitting" participant in charged drug conspiracy). The defendant has not raised the admission of this evidence as a ground for a new trial in his post-trial motions.

-5-

Case 1:07-cr-00020-JPJ   Document 55   Filed 08/30/07   Page 5 of 12   Pageid#: 207

information had not surfaced sooner because the government was unsure whether it was going to call Branch to testify as a witness and that the information only came to light in trial preparation discussions with the law enforcement officers involved in the case. The government attorney informed the court that under the circumstances the government would not call the CI as a witness in the case.

Although I was concerned about the timing of the disclosure, I denied the defendant's motion to continue the case.

II

Following a one-day trial, the jury found the defendant guilty of possession with intent to distribute or distribution of cocaine base in excess of fifty grams.

The defendant argues in his Motion for Acquittal that there was insufficient evidence to show that he actually distributed more than fifty grams of cocaine base on March 7, 2007. However, as the jury was instructed, it could find the defendant guilty if the government proved beyond a reasonable doubt either that the defendant possessed with the intent to distribute *or* distributed the drugs in question. (Instruction No. 13.) In other words, while the indictment charges in the conjunctive,

-6-

the government may prove its case in the disjunctive. *See United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001).[4]

In deciding a motion for acquittal based on insufficiency of the evidence, the evidence and all inferences therefrom must be viewed in a light most favorable to the government. *See United States v. Dominguez*, 604 F.2d 304, 310 (4th Cir. 1979). It is clear from the record that there was more than sufficient evidence from which the jury could find that the defendant was guilty of possession with intent to distribute more than fifty grams of cocaine base. Accordingly, the defendant's Motion for Acquittal will be denied.

### III

As his ground for a new trial, the defendant maintains that he was prejudiced by the court's refusal to continue the trial in order to allow him additional time to prepare in light of the new information that was provided by the government on the eve of trial. *See United States v. LaRouche*, 896 F.2d 815, 823 (4th Cir. 1990) (explaining that a defendant must show that a denial of a motion to continue caused prejudice). Because the defendant is unable to show that he suffered any prejudice in this case, I will deny this motion.

---

[4] The statute, of course, is in the disjunctive. 21 U.S.C.A. § 841(a)(1).

Whether done through inadvertence or for strategic reasons, the submission of evidence on the eve of trial that the government is mandated to provide to the defendant cannot be condoned. *See Giglio v. United States,* 405 U.S. 150, 154 (1972) ("[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government."). Due process requires that a prosecutor turn over impeachment evidence as well as exculpatory evidence to the defendant. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This "constitutional duty is triggered by the potential impact of favorable but undisclosed evidence . . . ." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A violation can occur even when the government fails to turn over evidence that is "known only to police investigators and not to the prosecutor." *Youngblood v. West Virginia*, 126 S. Ct. 2188, 2190 (2006) (internal quotations omitted). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437.

Impeachment and exculpatory evidence must be "disclosed to a defendant in time for its effective use at trial." *See United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985). This requirement is based on the premise that "it

is fundamentally unfair for the government to achieve a conviction through the concealment of evidence which undermines the strength of the government's case against the defendant." *United States v. Presser*, 844 F.2d 1275, 1282-83 (6th Cir. 1988).

Here, the evidence submitted by the government included information that on a prior occasion its CI attempted to steal drugs she bought for police during the course of an undercover operation. This information was both impeachment material, because it reflected on the credibility of the CI, as well as exculpatory, in that it may have been relevant to the defendant's alleged participation in the drug deal. Accordingly, the government was required to disclose it.

In spite of this clear duty, I find that the timing of the submission of this information caused no prejudice to the defendant. The CI was not called to testify. Therefore, it was unnecessary for the jury to assess her credibility because her testimony was not used by the government to secure the defendant's conviction. Even had she been called to testify, the defendant had an adequate opportunity to review the information and to make effective use of it at trial. *See United States v. Shifflett*, 798 F. Supp. 354, 355-56 (W.D. Va. 1992) (finding that no *Brady* violation occurred when the government disclosed a witness's criminal record to the defendant after direct examination of that witness).

-9-

Case 1:07-cr-00020-JPJ   Document 55   Filed 08/30/07   Page 9 of 12   Pageid#: 211

Moreover, irrespective of the fact that this information was not disclosed until the eve of the trial, the defendant was able to effectively question the use of the CI to obtain incriminating evidence against him. Without objection from the government, the defendant's counsel fully covered through the questioning of a DEA agent the CI's attempt to steal drugs for her own personal use in an undercover operation in November of 2006. The defendant was thus able to suggest to the jury that it was she, and not the defendant, who had brought drugs to the scene of the transaction.

Accordingly, I find that the defendant did have time to make effective use of this information. Even were this not true, the evidence of his guilt was so overwhelming that no prejudice could have feasibly resulted from the timing of the submission made by the government. To show prejudice the defendant must establish that had this information been released at an earlier time there is a "'reasonable probability' of a different result." *Kyles*, 514 U.S. at 434. The timing of the disclosure must "undermine[] confidence in the outcome of the trial." *Id.*

The defendant's main ground for alleging prejudice is that the timing of the release foreclosed him from exploring other avenues that might have produced evidence showing that the CI planted evidence in order to frame him. The defendant believes that because in a prior undercover drug operation the CI hid a portion of the drugs that she had obtained that she may well have planted the drugs on the

-10-

Case 1:07-cr-00020-JPJ   Document 55   Filed 08/30/07   Page 10 of 12   Pageid#: 212

defendant. This argument confuses the nature of the evidence disclosed by the government. The information provided by the government never implicated the CI in framing other persons in undercover drug operations. At most, it suggests that she was a drug addict who stole drugs from the police for her own personal use. No inference can be reasonably drawn from the nature of this information that the CI ever attempted to plant drugs on an unsuspecting third party to gain favor with the police.

Considering the sum of the evidence adduced at trial, there is not "a reasonable probability" that a different result would have occurred, even had the defendant been given this information days earlier. Here, the defendant made a number of incriminating statements regarding his actions on the night in question that amount to a confession that he had been distributing or attempting to distribute drugs. Moreover, the defendant voluntarily produced 55.8 grams of cocaine base and 10.4 grams of powder cocaine from underneath his clothing.

A thorough search of the CI and her vehicle prior to the "buy-bust" operation turned up no drugs nor any evidence that she had attempted to conceal contraband. Aside from the drugs found on the defendant, a set of digital scales of the kind typically used by dealers to distribute drugs was found in close proximity to the defendant. Not only was the defendant in possession of a large sum of cash, the marked cash was also found in the area where the defendant had been seated. This

evidence combined with incriminating statements made by the defendant and his act of surrendering a large quantity of drugs undermine any theory that the CI could have planted drugs on him at the scene. Therefore, further exploration of this theory would have been entirely fruitless. Considering the overwhelming evidence of guilt presented at trial, the defendant has failed to show that he suffered any prejudice by the timing of the government's disclosure in this case.

IV

For the reasons stated, it is **ORDERED** that the defendant's Motion for Judgment of Acquittal and Motion for New Trial are DENIED.

    ENTER: August 30, 2007

    /S/ JAMES P. JONES
    Chief United States District Judge